UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

|  |  |  |
|---|---|---|
| **CHRISTOPHER JONES,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **NO. 5:20-CV-183-MAS** |
| v. | ) | |
| | ) | |
| **ANDREW SAUL,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION & ORDER

Plaintiff Christopher Jones ("Jones") appeals the denial of the Commissioner's denial of disability insurance benefits (here, collectively "DIB") under Title II of the Social Security Act ("SSA").[1] Before the Court are the parties' cross-motions for summary judgment. [DE 13, 15]. For the reasons here discussed, the Court finds that the Administrative Law Judge ("ALJ") applied the proper legal framework and supported his non-disability finding with substantial evidence in the record. The Court grants the Commissioner's motion and denies Jones's competing motion.

---

[1] The legal standard DIB claims mirrors that of Supplemental Security Income ("SSI"). *See Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841, No. 90-3265, 1991 WL 310, at *3 (6th Cir. 1991) (table). "The standard for disability under both the DIB and SSI programs is virtually identical." *Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at *3 (E.D. Mich. Jan. 14, 2013), *report and recommendation adopted*, 2013 WL 450934 (E.D. Mich. Feb. 6, 2013); *see also Elliott v. Astrue*, No. 6:09-CV-069-KKC, 2010 WL 456783, at *4 (E.D. Ky. Feb. 3, 2010). Though only a DIB claim is at issue here, the Court generally references SSI and DIB case law interchangeably, mindful of the particular regulations pertinent to DIB claims.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Jones protectively filed an application for Title II DIB on September 15, 2016, alleging disability beginning November 7, 2013.  [Administrative Transcript ("Tr.") at 15, in the record at DE 11-1].  Jones was 41 years old at that time.  [Tr. at 25].  Jones attended school through high school and completed some college courses.  [Tr. at 39].  He has prior work experience as a police officer and working in a sheriff's office.  [Tr. at 41].  A very brief overview of his medical treatment is provided below and can be found in the record at DE 11.

On December 11, 2013, about one month after the time that Jones alleges he became disabled, he began seeing Patrick Kelleher, M.D., for primary care treatment of his back pain, high blood pressure, anxiety, and depression; he continued seeing Dr. Kelleher regularly through late 2018 [*See generally* Tr. at 372-87, 561-83].  Jones also pursued care with James K. Farris, P.A.-C and Harry Lockstadt, M.D., at Bluegrass Orthopedics for his back and hip pain from 2014 to 2016.  After an MRI, PA Farris diagnosed with a bulging disc at L4-5 and proscribed epidural steroid injections and physical therapy.  Dr. Lockstadt observed limited range of motion before flexion-extension rotation right and left, tenderness on the right side of Jones's neck and lower cervical levels, severe tenderness across L3-L4 and L5-S1 on both flexion and extension, tenderness in both right and left sacroiliac joints, bilateral positive straight leg raise, positive dysesthesias in both lower extremities, and dysesthesias in both feet.  In agreement with PA Farris, Dr. Lockstadt also noted disc protrusion in Jones's lower back along with possible annular tear at the L4-L5 level and stenosis. [Tr. at 330].   Dr. Lockstadt likewise ordered an epidural cortisone injection for Jones's spinal stenosis symptoms and physical therapy.  Dr. Lockstadt referred Jones to David Bosomworth, M.D. at Bluegrass Pain Management for the steroid injections/epidurals.  [*See generally*, Tr. at 297-302, 305-49, 355-58, for Bluegrass Orthopedics and Bluegrass Pain Management records].  According to Jones, Dr. Lockstadt recommended additional injections and

potentially surgery, but Jones did not pursue those treatments because his insurance would not cover the procedures.

Jones sought treatment with Dr. Mark Secor, M.D., for right shoulder pain in 2017 and 2018, which was diagnosed as a tendon tear and osteoarthritis [Tr. at 419, 412-23, 478-79, 481-82, 603, 609]; and engaged in a brief stint of physical therapy for that pain. [Tr. at 462-77]. He also went to providers for gastrointestinal issues in 2018, including one hospitalization for bleeding. [Tr. at 398-418, 424-61, 549-58, 586-89]. Jones also engaged in psychotherapy for his anxiety and depression with licensed clinical social worker Stacy Harris regularly in 2018. [Tr. at 485-541]. Christi Hundley, M.D., performed a psychological evaluation of Plaintiff in February 2017. [Tr. at 360-62]. She diagnosed anxiety and opined that Plaintiff had a fair ability to understand and remember simple instructions and maintain attention and concentration; a mildly to moderately limited ability to interact appropriately in a work setting; and a moderately limited ability to handle stress associated with a work environment. [Tr. at 362].

Throughout 2015, 2016, and 2017, Dr. Kelleher continued to treat Jones for a variety of complaints and conditions, including high blood pressure, back pain, right shoulder pain, anxiety, gastrointestinal issues, and depression. During this period Dr. Kelleher proscribed Jones Lisinopril, metoprolol, hydrocodone, neurotin, Flexeril, buproprion, and amitriptyline. [Tr. at 556-87]. Of particular significance to this appeal, both Dr. Kelleher and Dr. Bosomworth ultimately opined that Jones is permanently disabled. [*See* Tr. at 371 and 300, respectively].

Barry Burchett, M.D., examined Plaintiff on March 23, 2017, as a consultant in connection with his application for disability benefits. [Tr. at 364-69]. Dr. Burchett observed Plaintiff's mood to be depressed and positive bilateral Tinel sign of his hands. [Tr. at 365-66]. He diagnosed

Plaintiff with chronic bilateral hip pain, depression, and hypertension.  [Tr. at 367].  He also noted

mild limitation of lumbar flexion and diminished deep tendon reflexes.  [Tr. at 367].

The Commissioner engaged two state agency psychologists, Laura Cutler, Ph.D., and Dan

Vandivier, Ph.D., to conduct an independent review of Jones's medical records.    Both

psychologists opined that his mental impairments were "non-severe," meaning that they did not

significantly affect his ability to perform basic work activities.  [Tr. 83 and 100].  In addition, two

state agency physicians, Allen Dawson, M.D., and Robert Brown, M.D., independently reviewed

Plaintiff's medical records and both opined that he could lift and carry 50 pounds occasionally and

25 pounds frequently and frequently stoop and climb ladders, ropes, and scaffolds (and perform

other postural activities without limitation).  [Tr. 85-87, 102-04].

ALJ Christopher C. Sheppard conducted an administrative hearing (at which Jones was

present) on January 16, 2019, and denied Jones's DIB claim initially on March 21, 2019.  [Tr. at

12].  Patsy Hughes acted as a non-attorney representative for Jones at the administrative hearing,

and impartial Vocational Expert ("VE") Laura Lykins was also present and testified.  [Tr. at 33].

In a thorough and lengthy written opinion, ALJ Sheppard found that Jones was not disabled during

the relevant period[2] and denied Jones's DIB application.  [Tr. at 15-27].  ALJ Sheppard found that

Jones had not engaged in substantial gainful activity since the alleged onset date of disability of

---

[2] The relevant period in this case—during which Jones must establish that he was disabled—extends from application filing on November 7, 2013, through the ALJ's corresponding decision on March 21, 2019.  Though evidence preceding the relevant period may be relevant to establish Jones's longitudinal medical record, the proof ultimately must pertain somehow to Jones's disability status during the current application's pendency. *See, e.g.*, *Cauthen v. Saul*, 827 F. App'x 444, 446 (5th Cir. 2020) (noting that a plaintiff "must show that she meets the statutory definition of disability while her SSI application was pending" and clarifying that the relevant period was between application filing and the decision date); *see id.* (explaining that, though "disability evidence completely unrelated to the relevant period is irrelevant to adjudication of the claim[,] . . . pre-application medical records may be relevant to the existence of a disability during the relevant period" in some instances).

November 7, 2013.  [Tr. at 17].  The ALJ found that Jones has the following severe impairments: degenerative disc disease of the lumbar and cervical spine, status post remote L5-S1 arthroplasty, right rotator cuff tear, depressive disorder with post-traumatic stress disorder, and remote history of left wrist scaphoid repair.  [Tr. at 17].  The ALJ further found that Jones's hypertension, hyperlipidemia, and history of gastritis, considered individually and in combination, were not "severe" within the meaning of the Social Security Act.  [Tr. at 17].  He determined, however, that the above-listed severe impairments either individually or in combination did not meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [Tr. at 18].

ALJ Sheppard ultimately concluded that Jones had the Residual Functional Capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with certain outlined exertional and non-exertional limitations.  [Tr. at 19].  For instance, the ALJ found that Jones could lift and carry twenty pounds occasionally and ten pounds frequently, could walk/stand or sit for six hours out of an eight-hour workday, could occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds, could occasionally stoop, kneel, crouch, but never craw and should avoid overhead lifting with his right arm.  [Tr. at 19].  Additionally, the ALJ determined that Jones could understand, remember, and carry out instructions for perform simple and routine tasks, could sustain attention and concentration to complete simple tasks over two-hour segments, respond appropriately to work situations, but should have no more than occasional interaction with supervisors, coworkers, and the public.  [Tr. at 19].

Though ALJ Sheppard held that Jones could not perform past relevant work (*see* 20 C.F.R. § 404.1565), he found—informed by VE testimony and based on Jones's age, education, work experience, and RFC—that jobs existed in significant numbers in the national economy that Jones could perform.  [Tr. at 25].  *See* 20 C.F.R. §§ 404.1569, 404.1569a.  These representative areas of

work, as described in the Dictionary of Occupational Titles ("DOT"), included: bench worker, sorter, and inspector.  [Tr. at 26].  ALJ Sheppard thus found that Jones was not disabled under the SSA during the pendency of his benefits application.  [Tr. at 26].  *See* 20 C.F.R. § 404.1520(g).

On March 4, 2020, the Appeals Council denied Jones's request for review of the ALJ's decision, finding there was no abuse of discretion, error of law, that the decision was supported by substantial evidence and not contrary to public policy.  [Tr. at 1].  Jones subsequently filed this action on May 1, 2020 [DE 1], and the parties filed cross-motions for summary judgment in December 2020 and January 2021 [DE 13, 15].  This matter is now ripe for review and resolution.

## II.   LEGAL FRAMEWORK

Judicial review of the ALJ's decision is deferential and strictly limited.  The Court's sole task is to determine whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial evidence in the record.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").  Substantial evidence is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  "The substantial-evidence standard allows considerable latitude to administrative decision makers" and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The Court must make its substantial evidence determination based on the record as a whole. *Cutlip*, 25 F.3d at 286.  However, the Court need not comb the entire (lengthy) record in search

for facts supporting under-developed arguments. [*See* DE 16 (General Order No. 13-7) (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.")]. Further, the Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court must affirm the ALJ's decision if there is substantial evidence in the record to support it, even if substantial evidence might also support the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 393 (6th Cir. 2004); *Mullen*, 800 F.2d at 545. Likewise, the Court must affirm any ALJ decision supported by substantial evidence, even if the Court itself might have reached a different original result. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

For context, the Court briefly outlines the proper five-step sequential analysis as conducted by an ALJ in determining disability status. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. §§ 416.920(a), 404.1520(a). In the first step, the ALJ decides whether the claimant is performing substantial gainful activity. 20 C.F.R. §§ 416.920(a)(4)(i), 404.1520(a)(4)(i). In the second step, the ALJ determines whether the claimant suffers from any severe impairments. *Id.* at §§ 416.920(a)(4)(ii), 404.1520(a)(4)(ii). In the third step, the ALJ decides whether such impairments, either individually or collectively, meet an entry in the Listing of Impairments. *Id.* at §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii). In the fourth step, the ALJ determines the claimant's RFC and assesses whether the claimant can perform past relevant work. *Id.* at §§ 416.920(a)(4)(iv), 404.1520(a)(4)(iv). Finally, in the fifth step, the burden

shifts to the Commissioner.  The ALJ must consider and decide whether there are jobs that exist in significant numbers in the national economy that the claimant could perform based on RFC, age, education, and work experience.  *Id.* at §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).  If the ALJ determines at any step that the claimant is not disabled, the analysis ends there.

### III.    ANALYSIS

Plaintiff broadly argues that the ALJ's non-disability determination—in particular, his RFC conclusion and reliance upon the VE testimony—is not supported by substantial evidence. Specifically, Jones argues that the ALJ failed to properly weigh the opinions of the treating and examining physicians, did not sufficiently explain how he incorporated the opinion of Dr. Hundley, and improperly weighed the third-party evidence in his RFC calculation.  The Court addresses, and ultimately rejects, each contention in turn.

**A.    THE ALJ PROPERLY WEIGHED THE TREATING AND EXAMINING SOURCES' OPINIONS, AS WELL AS THE THIRD-PARTY EVIDENCE, AND HIS ULTIMATE RFC CONCLUSION IS SUPPORTED BY SUBSTANTIAL EVIDENCE.**

For the reasons discussed below, the Court finds that the ALJ did not improperly discount either Dr. Kelleher's or Dr. Bosomworth's opinions, did not fail to explain sufficiently how he incorporated Dr. Hundley's opinion in his RFC calculation, did not improperly weigh the testimony of Jones's father and friend, and further finds that the ALJ's RFC finding is supported by substantial evidence from the full administrative record.

### 1.    Drs. Kelleher and Bosomworth's Medical Evidence and Disability Opinions

As Jones concedes, the ALJ assigned little weight to the opinions of treating Drs. Kelleher and Bosomworth that Jones has a permanent disability because that "is a determination of disability, which is an issue reserved for the Commissioner.  By regulation, such opinions are entitled to no specific significance or weight."  [Tr. at 24].  Jones claims, however, that ALJ Sheppard erred because he "refus[ed] to even examine and then weigh the opinions of Drs.

Kelleher and Bosomworth." [DE 13-1 at Page ID # 685].  Jones argues that "while Dr. Kelleher's and Dr. Bosomworth's conclusions that Plaintiff is disabled are neither persuasive nor should be, the remainder of the evidence in the record should be thoroughly examined." [DE 13-1 at Page ID # 686].  Jones claims that the "extensive evidence of treatment with these physicians in the record [. . . ] support the opinions that Plaintiff is disabled.  The ALJ must consider this evidence." [DE 13-1 at Page ID # 686].  These statements ignore the several pages of the ALJ's opinion analyzing, in detail, Jones' treatment history with Dr. Kelleher.   [Tr. at 20-23].   The ALJ considered that Dr. Kelleher found Jones had been moderately depressed since January 2008, which the ALJ considered "significant because it shows that the claimant was able to wrk and function with anxiety and depression for many years before his alleged onset date."  [Tr. at 20]. Similarly, the ALJ considered that "Dr. Kelleher listed that the claimant's low back pain was stable and noted that the onset date was 2008 (13F14-17).  This evidence is significant because it shows that the claimant was able to work and function for many years before his alleged onset [of disability] date in spite of his back impairments."  [Tr. at 23].  The ALJ's opinion makes it clear that he examined Jones's treatment history, but properly discounted Drs. Kelleher and Bosomworth's determinations of disability.[3]   Further, Jones argues that "while Dr. Kelleher's and Dr. Bosomworth's final conclusions regarding Plaintiff's status as disabled do not warrant any weight, the ALJ still should have incorporated the other medical evidence from the record into his RFC determination." [DE 13-1 at Page ID 688].  Drs. Kelleher and Bosomworth's conclusory statements determining disability, however, contained no opinions regarding Jones's functional limitations, and therefore did not aid the ALJ in assessing Plaintiff's residual functional capacity.

---

[3] The ALJ gave little weight to the state agency medical consultants who opined Jones could perform work at a medium exertional level.  The ALJ disagreed, finding that the medical evidence supported the conclusion that Jones was more limited than they opined.  [Tr. 23].

As Jones repeatedly concedes, the ALJ properly no specific significance or weight to Dr. Kelleher and Dr. Bosomworth's opinions that Jones has a permanent disability. The ALJ elected, in his discretion, not to assign these opinions any weight because they were conclusory, non-specific, and on a matter specifically reserved for the Commissioner. The ALJ further set forth a thorough analysis of the treatment records and stated the significance of Dr. Kelleher's treatment history. The Court finds the ALJ properly weighed these opinions in assessing Jones's RFC.

## 2.    The ALJ's Incorporation of Dr. Hundley's Opinion in the RFC Calculation

ALJ Sheppard gave "great weight" to consultative medical examiner Dr. Hundley.[4] Dr. Hundley opined that "Mr. Jones' ability to understand and remember simple instructions is fair and his ability to maintain attention and concentration is fair. His ability to interact appropriately in a work setting is mildly to moderately limited and his ability to handle the stresses typically associated with a work environment is moderately limited." [Tr. at 362]. Jones asserts that the ALJ erred when he failed to include any type of stress limitation in his RFC determination after assigning "great weight" to Dr. Hundley's opinion. Jones cites *Ciavarella v. Colvin*, No. 5:13-CV-2031, 2014 WL 5601344 (N.D. Ohio Nov. 3, 2014), in support of his argument that failing to include an explicit, verbatim stress limitation is an error. In *Ciavarella*, however, the ALJ *rejected* the opinion of the treating physician and concluded the plaintiff could return to his prior line of work, without any discussion of the plaintiff's purported stress level limitations. *Ciavarella v. Colvin*, No. 5:13-CV-2031, 2014 WL 5601344 at *8 (N.D. Ohio Nov. 3, 2014).

That is not the situation presented here. In this case, ALJ Sheppard did not reject Dr. Hundley's opinion, but adopted it and found it was "consistent with the overall evidentiary file."

---

[4] The Court notes the ALJ gave little weight to the state agency mental consultants, finding that the medical evidence overall supported the conclusion that Jones was more limited in his abilities than they opined. [Tr. 23].

[Tr. at 24]. The ALJ specifically considered Dr. Hundley's opinion that Jones "had no more than moderate mental limitations[,]" [Tr. 362] which is a direct reference to Dr. Hundley's statement that Jones's "ability to interact appropriately in a work setting is mildly to moderately limited and his ability to handle the stresses typically associated with a work environment is moderately limited." [Tr. 362]. Though the ALJ did not verbatim restate Dr. Hundley's limitations, he did incorporate them into his residual functional capacity, limiting Jones to "simple and routine tasks" in unskilled jobs, the least mentally demanding category of work. "An ALJ 'is not required to mention every piece of evidence but must provide an accurate and logical bridge between the evidence and the conclusion that [Plaintiff] is not disabled.'" *Gilliam v. Astrue*, 2010 WL 2837260, at *3 (E.D. Tenn. July 19, 2010) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir.2008) (citation and quotation omitted)). Here, the ALJ acknowledged the moderate mental limitations in Dr. Hundley's opinion and limited Jones to unskilled work. He built a logical bridge between the evidence and the conclusion; nothing further is required.

### 3.     Third-Party Evidence

Finally, Jones argues that the ALJ committed error in his characterization of the opinions of Jones's father and friend, and in his failure "to even mention" Jones's wife's hearing testimony. [DE 13 at Page 692]. ALJ was required to consider these nonmedical opinions because they may provide information about the severity of Jones's impairments and his ability to carry out certain tasks. *See* 20 C.F.R. § 404.1527. The Court finds that ALJ Sheppard appropriately considered and weighed this evidence in his decision.

The ALJ gave partial weight to the opinions of Jones's father and friend "because they have known the claimant for extended periods and have first-hand knowledge of how his impairments have affected his ability to function." [Tr. at 24]. The third-party written statements indicated Jones could attend to his personal care, "help feed and get children ready for school,"

11

"sometimes take[] kids to school and sometimes pick up at school," "help prepare meals and other household chores," take care of pets, do "light cleaning," "complete meals on days when he is physically able[,]" go outside occasionally, shop in stores and online, and go to church. [Tr. 219-24 and 251-59]. The ALJ accurately reflected these opinions in his decision, stating, "Both report that [Plaintiff] retains the ability to cook, dress, bathe, shave, pay bills, manage banking accounts, count change, drive, shop, and go to church[.]" [Tr. 24]. The ALJ did not mischaracterize the third-party statements—in fact, he repeated them specifically while acknowledging "claimant's severe impairments will affect the claimant's abilities[.]" [Tr. 24].

Likewise, the ALJ did not ignore Jones's wife testimony. He explicitly noted that "[t]he claimant's spouse testified that he has to drive everywhere, no longer cooks, and becomes very angry at times." [Tr. 20]. Jones argues ALJ Sheppard mischaracterized the evidence because Jones's wife testified his impairments significantly inhibit his ability to complete daily living activities. The ALJ accurately summarized Jones's wife's brief testimony, most of which was about his need to drive due to panic attacks, and the effect of Jones's impairments on his family. [Tr. 62-65].

The record flatly contradicts Jones's assertion that the ALJ failed to mention Jones's wife's testimony, or that he mischaracterized the written third-party opinions. The Court finds no error in the ALJ's consideration and weighing of this evidence.

## IV.   CONCLUSION

The Court may not substitute its own independently reached judgment for that of the ALJ. Rather, the Court may decide only whether the ALJ's actual analysis is supported by substantial evidence, and must affirm the ALJ's decision if so, even if substantial evidence might also support the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 393 (6th Cir. 2004). Here,

the Court rejects Jones's challenges to the ALJ's decision and finds that it was supported by substantial evidence in the record.

For all of the reasons discussed, the Court **GRANTS** the Commissioner's motion for summary judgment [DE 15] and **DENIES** Jones's competing motion [DE 13]. A corresponding Judgment follows.

This the 23rd day of September, 2021.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge

13